**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SAM CARTER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiff, | ) Case No. |
| | ) |
| v. | ) **CLASS ACTION COMPLAINT** |
| | ) **FOR VIOLATIONS OF** |
| EARTHLINK HOLDINGS CORP., | ) **SECTIONS 14(a) AND 20(a) OF** |
| JOSEPH F. EAZOR, SUSAN D. | ) **THE SECURITIES EXCHANGE** |
| BOWICK, KATHY S. LANE, | ) **ACT OF 1934** |
| GARRY K. MCGUIRE, R. | ) |
| GERARD SALEMME, JULIE A. | ) **JURY TRIAL DEMANDED** |
| SHIMER, MARC F. STOLL, and | ) |
| WALTER L. TUREK, | ) |
| Defendants. | |

Plaintiff Sam Carter ("Plaintiff"), by his undersigned attorneys, alleges upon

personal knowledge with respect to himself, and upon information and belief based

upon, *inter alia*, the investigation of counsel as to all other allegations herein, as

follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of

himself and the other public holders of the common stock of EarthLink Holdings

Corp. ("EarthLink" or the "Company") against EarthLink and the members of the

Company's board of directors (collectively, the "Board" or "Individual

Defendants," and, together with EarthLink, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, Regulation G, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), in connection with the proposed merger between EarthLink and Windstream Holdings, Inc. ("Windstream").

2.      On November 5, 2016, EarthLink announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Europa Merger Sub, Inc., a wholly-owned subsidiary of Windstream, will be merged with and into EarthLink, with EarthLink surviving as an indirect, wholly-owned subsidiary of Windstream, and immediately thereafter, EarthLink will merge with and into Europa Merger Sub, LLC, a wholly-owned subsidiary of Windstream, with Europa Merger Sub, LLC surviving as an indirect, wholly-owned subsidiary of Windstream (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, EarthLink shareholders will receive 0.818 shares of Windstream common stock in exchange for each EarthLink common share they own (the "Merger Consideration").  The Merger Consideration is fixed and will not be adjusted to reflect stock price changes with respect to Windstream's or EarthLink's stock prior to the closing of the Proposed Transaction.  Based on the closing price of Windstream common stock on the NASDAQ Global Select Market on November 3, 2016, the last

trading day before media reports of the possibility of a transaction were published, the Merger Consideration represented approximately $5.55 in value for each share of EarthLink common stock.

4.    The Merger Consideration is insufficient and undervalues the Company.  Indeed, analysts have set higher price targets for the Company's common stock, and the Company's stock price closed at $6.98, significantly above the implied value of the Merger Consideration, as recently as August 2016. Furthermore, as outlined below, the Merger Consideration is the result of a flawed sales process during which the Board and EarthLink management focused exclusively on finalizing a transaction with Windstream and declined to reach out to other strategic and financial parties.

5.    On January 24, 2017, in order to convince EarthLink's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the background to the Proposed Transaction; (ii) financial projections for the Company and Windstream; (iii) conflicts of interest faced by the Board; and (iv) the valuation analyses

performed by the Company's financial advisors, Foros Securities LLC ("Foros") and Goldman, Sachs & Co. ("Goldman" and collectively, the "Financial Advisors") in support of their fairness opinions, as well as conflicts of interest they faced. The special meeting of EarthLink shareholders to vote on the Proposed Transaction is scheduled for February 24, 2017. It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote so that they can properly exercise their corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against EarthLink and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9, Regulation G, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to EarthLink shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7.       This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.       Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.       Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) EarthLink maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this

District.

## **PARTIES**

10.    Plaintiff is, and at all relevant times has been, a shareholder of EarthLink.

11.    Defendant EarthLink is incorporated in Delaware and maintains its principal executive offices in Atlanta, Georgia.  The Company provides IT, network, and communication services to individual and business consumers.  The Company provides customers with managed IT services including cloud computing, data centers, virtualization, security, applications, and support services. EarthLink also offers nationwide data and voice IP services.

12.    Individual Defendant Joseph F. Eazor has served on the Board and as the Company's Chief Executive Officer and President since January 2014.

13.    Individual Defendant Susan D. Bowick is, and has been at all relevant times, an EarthLink director.

14.    Individual Defendant Kathy S. Lane, is, and has been at all relevant times, an EarthLink director.

15.    Individual Defendant Garry K. McGuire is, and has been at all relevant times, an EarthLink director.

16.     Individual Defendant R. Gerard Salemme is, and has been at all relevant times, an EarthLink director.

17.     Individual Defendant Julie A. Shimer, is, and has been at all relevant times, an EarthLink director and the Chairwoman of the Board.

18.     Individual Defendant Marc F. Stoll is, and has been at all relevant times, an EarthLink director.

19.     Individual Defendant Walter L. Turek is, and has been at all relevant times, an EarthLink director.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of EarthLink (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

21.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of January 23, 2017, there were approximately 105 million shares of EarthLink common stock outstanding, held by thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of EarthLink will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

ii)   whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)  whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.      The Merger Consideration is the Result of a Flawed Strategic Review Process and Fails to Adequately Compensate Plaintiff and the Class for Their EarthLink Shares**

22.      EarthLink provides managed network, security, and cloud services to business and residential customers in the United States. It operates through four segments: Enterprise/Mid-Market, Small Business, Carrier/Transport, and Consumer Services.  The Company was formerly known as EarthLink, Inc. and changed its name to EarthLink Holdings Corp. in December 2013.  The Company was founded in 1994 and is headquartered in Atlanta, Georgia.

23.     The Merger Consideration EarthLink shareholders stand to receive if the Proposed Transaction is consummated fails to adequately compensate them for their shares.   Indeed, the $5.55 implied value of the Merger Consideration is significantly below the share price indicated by certain valuation analyses performed by the Company's Financial Advisors, which show the Company's shares are worth $8.30.  The Merger Consideration is also significantly below the Company's $6.98 closing price on August 5, 2016, a mere three months before the Merger Agreement was signed.

24.     The Merger Consideration is also inadequate in light of EarthLink's recent financial performance.   On August 8, 2016, the Company reported the following impressive financial results for the second quarter: Net income was $4.1 million during the quarter, compared to a net loss of $9.9 million in the second quarter of 2015; and net cash provided by operating activities was $40.3 million during the quarter, compared to net cash provided by operating activities of $33.3 million in the second quarter of 2015 and $10.6 million in the first quarter of 2016.

25.     Commenting on the strong second quarter financial results, Individual Defendant Eazor stated: "The second quarter was another strong quarter for the company…Our overall business performance continued to improve, we strengthened our balance sheet further with a new credit facility, and we were

recognized by Forbes as one of America's top 100 most trustworthy companies. Finally, in early July, we acquired Boston Retail Partners to expand our capabilities as a trusted advisor to retailers."

26.    The Company has also reported positive net income for the past three consecutive quarters.

27.    Despite the Company's recent strong financial performance and promising growth prospects, the Board agreed to the inadequate Merger Consideration after conducting a flawed strategic review process. Specifically, the Proxy indicates that the Board did not expand its search for strategic alternatives to maximize shareholder value, and instead focused solely on finalizing a deal with Windstream and procuring personal benefits for Company directors and management.

28.    While the Proxy states that between the summer of 2014 and the signing of the Merger Agreement "EarthLink has held discussion with a number of potential financial and strategic parties regarding possible transactions, both in response to unsolicited inquiries and following contacts made by EarthLink," the Proxy fails to provide any details regarding such transactions and/or inquiries. The Proxy also notes that during an October 7, 2016 Board meeting, Company management made a presentation regarding the various unidentified strategic

alternatives considered as of that date, including "alternative business combinations EarthLink has considered but which were not completed." As a result of the Proxy's vague references to such "alternative business combinations," EarthLink stockholders have no idea whether the Company was presented with a superior alternative to the Proposed Transaction which the Board failed to pursue.

29. Also at the October 7th Board meeting, the Board told Foros and management not to contact or solicit alternative potential counterparties. In other words, the Board was committed to finalizing a deal with Windstream without soliciting interest from a single other party.

30. Three days after it told Foros not to reach out to other potentially interested parties, the Board began attempting to negotiate personal benefits for themselves. Specifically, while the Proxy notes that Windstream initially proposed having only one EarthLink director serve on the board of the post-close combined company, on October 10, 2016, the Board formulated a counterproposal that demanded an increase in the number of EarthLink directors to be appointed to the combined company's board from one to not less than one-third of the total board size. In other words, the Individual Defendants pushed to ensure that more of them would keep their lucrative directorship positions with the post-close company, despite the fact that an agreement regarding the form and value of the merger

consideration to be received by EarthLink shareholders was nowhere near finalized.

31.     The Individual Defendants continued pushing for more seats on the post-close Board in subsequent negotiations.  On October 12, 2016, the Board submitted a proposal calling for up to four EarthLink directors to be appointed to the combined company's board, subject to further negotiation.

32.     The Individual Defendants continued pushing to procure personal financial benefits for themselves and Company insiders before securing sufficient consideration for EarthLink's shareholders.  Specifically, during an October 31, 2016 meeting, the Board instructed its legal advisors to negotiate greater flexibility in the Merger Agreement regarding EarthLink's ability to issue equity and other compensation to employees between signing and closing.  And the Proxy glaringly fails to disclose the amount and value of the equity awards held by the Individual Defendants, and further fails to state whether any "equity or other compensation to employees" has been issued since the signing of the Merger Agreement.

33.     Additionally, Windstream has entered into an offer letter in connection with the Proposed Transaction with John Dobbins, EarthLink's Executive Vice President of Network Operations, pursuant to which he has been offered a lucrative position with the post-close combined company.  The Proxy

fails to specify when Windstream first expressed interest in retaining Mr. Dobbins.

34.     In sum, the Merger Consideration fails to adequately compensate EarthLink shareholders, and is the result of a flawed strategic review process during which Company management and the Board failed to conduct a sufficient and robust review of strategic alternatives and instead focused on procuring unique personal benefits for themselves.

## II.     The Merger Agreement's Deal Protection Provisions Deter Superior Offers

35.     In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for EarthLink.

36.     First, the Merger Agreement contains a no solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for EarthLink shareholders.  The Merger Agreement generally states that the Company and the Individual Defendants shall not: (i) initiate, solicit, propose or knowingly encourage or knowingly facilitate any inquiry or the making of any proposal or offer that constitutes, or would reasonably

be expected to lead to, an acquisition proposal; (ii) engage in, continue or otherwise participate in any discussions or negotiations relating to any acquisition proposal; or (iii) provide any non-public information to any person in connection with any acquisition proposal.

37.     Additionally, the Merger Agreement grants Windstream recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) several days to negotiate with EarthLink, amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

38.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that Windstream can easily foreclose a competing bid.  As a result, these provisions unreasonably favor Windstream, to the detriment of EarthLink's public shareholders.

39.     Lastly, the Merger Agreement provides that EarthLink must pay Windstream a termination fee of $35 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination

fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a significant premium for the right to provide EarthLink shareholders with a superior offer.

40.    Ultimately, these preclusive deal protection provisions restrain EarthLink's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

41.    Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that EarthLink's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

### III.    The Materially Incomplete and Misleading Proxy

42.    On January 24, 2017, EarthLink filed the Proxy with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the

Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Reconciliation of Non-GAAP Projections Included in the Proxy*

43.     First, the Proxy fails to provide material information concerning the Company's and Windstream's financial projections.   Specifically, the Proxy provides projections for various non-GAAP metrics, including Adjusted EBITDA, Adjusted EBITDA Margin, and Unlevered Free Cash Flow, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile these non-GAAP projections to GAAP.

44.     When a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information.   17 C.F.R. § 244.100.

45.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as

EarthLink has included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.

46.    In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016,

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-

the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

47.    The above-referenced line item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

48.    In order to make the projections included on page 92 of the Proxy materially complete and not misleading, Defendants must provide either a reconciliation table of the non-GAAP measures to the most comparable GAAP measures, or the line item projections for the metrics used to calculate the non-GAAP measures included in the proxy (*i.e.*, for Adjusted EBITDA, disclose net

---

evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[2] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

income (loss) before interest expense and other, net, income taxes, depreciation and amortization, stock-based compensation expense, impairment of goodwill and long-lived assets, restructuring, acquisition and integration-related costs, gain on sale of businesses and loss on extinguishment of debt; and for Unlevered Free Cash Flow, disclose net income (loss) before interest expense and other, net, income taxes, depreciation and amortization, stock-based compensation expense, impairment of goodwill and long-lived assets, restructuring, acquisition and integration-related costs, gain on sale of businesses and loss on extinguishment of debt, less cash used for purchases of property and equipment.).

49.    The Proxy specifically notes that "Adjusted EBITDA, Unlevered Free Cash Flow and Adjusted EBITDA Margin should not be considered in isolation, as an alternative to, or more meaningful than measures of financial performance determined in accordance with GAAP." Proxy at 93. However, by providing only these non-GAAP measures in the Proxy without the above-referenced line item projections or a reconciliation to the most directly comparable GAAP measures, Defendants have in essence asked EarthLink shareholders to consider the disclosed projections "in isolation" from, and as an "alternative to" GAAP measures. The projections disclosed on page 92 of the Proxy are therefore misleading.

*Other Omitted Material Projections*

50.     The Proxy also fails to disclose Windstream's projected after-tax unlevered free cash flows for fiscal years 2017 through 2019, which are material to EarthLink shareholders because they are receiving consideration in the form of Windstream stock.  The Proxy notes that such projections exist and were utilized by each company's financial advisors in connection with their respective valuation analyses.  Under sound corporate finance theory, EarthLink stockholders would find Windstream's cash flow projections material in assessing the fairness of the exchange ratio.  The omission of such projections renders the Windstream projections set forth on page 109 of the Proxy materially incomplete and misleading.

51.     Further, the Proxy notes that, in connection with preparing its fairness opinion, Goldman reviewed "certain net operating loss utilization forecasts for EarthLink and Windstream prepared by the management of EarthLink and certain net operating loss utilization forecasts for Windstream pro forma for the mergers prepared by the management of EarthLink, in each case, as approved for Goldman Sachs's use by EarthLink," referred to as the "NOL Forecasts."  Proxy at 82. However, the Proxy fails to disclose the NOL Forecasts.  Such forecasts are material to EarthLink's shareholders, as the Board cites the Company's NOLs and

the expectation that the combined company will benefit from the utilization of such NOLs as a primary reason why EarthLink shareholders should vote in favor of the Proposed Transaction.  Proxy at 67.  The omission of the NOL Forecasts render the summary of Goldman's and Foros's valuation analyses which utilized the NOL Forecasts, as well as the vague references to the potential benefits of the NOLs such as the one on page 67, incomplete and misleading.

52.    Additionally, the Proxy notes that, in connection with preparing its fairness opinion, Goldman reviewed certain financial analyses and forecasts for Windstream pro forma for the mergers prepared by the management of EarthLink, in each case, as approved for Goldman Sachs's use by EarthLink.  Proxy at 82. However, the pro forma forecasts have been omitted from the Proxy.  Such forecasts are material to EarthLink shareholders, as they are necessary to assess the fairness of the Proposed Transaction in which EarthLink shareholders are being asked to give up their shares in exchange for stock in the pro forma entity.  The omission of the pro forma forecast renders the summary of Goldman's and Foros's valuation analyses which utilized such forecasts, as well as the summary of prospective financial information appearing on page 92 of the Proxy, incomplete and misleading.  Indeed, it is well-settled that if directors choose to disclose

valuation information in a proxy, they must provide complete and accurate information.

_Omission of Material Information Concerning Conflicts of Interest Faced by the EarthLink Board_

53.   The Proxy also fails to provide material information concerning EarthLink's directors' interests in the Proposed Transaction, which "are different from" the interests of EarthLink shareholders generally.   Proxy at 110. Specifically, the Proxy fails to quantify the amount of outstanding options and restricted stock units held by each of the Individual Defendants and the total value of such options and units if the Proposed Transaction is consummated.   The Individual Defendants' options will be converted into the right to receive Windstream stock _regardless of whether the options are vested or unvested_.   The omitted information is material to EarthLink's shareholders, as it is imperative that they fully understand the financial motivations to consummate the Proposed Transaction that each of the Individual Defendants have that are "different from" theirs.   The omission of such information renders the generic description of the treatment of the Board's equity awards on page 110 of the Proxy incomplete and misleading, as shareholders are unable to properly quantify and assess the significance of the Board's conflict of interest.

*Omission of Material Information Necessary to Assess the Financial Advisors' Analyses*

54.    The Proxy also fails to provide sufficient information for shareholders to assess the valuation analyses performed by EarthLink's Financial Advisors in support of their fairness opinions and to assess certain conflicts of interests the bankers faced.

55.    With respect to Foros's *Selected Publicly Trades Companies Analysis* (Proxy at 75), the Proxy fails to disclose the individual multiples for each company utilized.  As a result of this omission, shareholders are unable to assess whether Foros applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied per share equity reference ranges. The omission of such information renders the summary of this valuation analysis and the implied share price ranges incomplete and misleading.

56.    With respect to Goldman's *Premia Analysis* (Proxy at 89), the Proxy fails to disclose the all-stock merger transactions Goldman utilized, as well as the high/low range, mean, and medium premiums observed in connection with the transactions utilized.  As a result of these omissions, shareholders are unable to assess whether Goldman applied appropriate premia, or, instead, applied unreasonably low premia in order to drive down the illustrative implied prices per

share of EarthLink stock.  The omission of such information renders the summary of this valuation analysis and the implied share price ranges incomplete and misleading.

57.     The Proxy also fails to include a summary of the *Selected Precedent Transaction Analyses* the Financial Advisors performed.  Such analyses are routinely performed by bankers in connection with preparing fairness opinions, and Windstream's own financial advisor performed such an analysis here.  Proxy at 103.  The omission of such analyses render the Proxy's summaries of each Financial Advisor's valuation analyses materially incomplete and misleading. And, if EarthLink's Financial Advisors did not perform a Selected Transactions Analysis, the Proxy should disclose why such a common analysis was not performed.

*Omission of Information Regarding the Financial Advisors' Conflicts of Interest*

58.     With respect to the fees EarthLink has agreed to pay Foros in connection with the Proposed Transaction, the Proxy notes that EarthLink has paid Foros "retainer fees" and agreed to pay additional consideration, but fails to quantify the amount of the "retainer fees" paid.  Proxy at 81.  Such information is required pursuant to 17 C.F.R. § 229.1015(b)(4), which requires disclosure of "any

compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates. Such information is also material to EarthLink shareholders. Indeed, it is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered in assessing how much credence to give its analysis. A reasonable shareholder would want to know an important economic motivation of the advisor employed by a board to assess the fairness of the transaction to shareholders, when that motivation could rationally lead that advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to him, given his overall economic interest, than only approving a deal at truly fair price to shareholders. The omission of such information renders the vague reference to the "retainer fees" on page 81 of the Proxy incomplete and misleading.

59. Further, according to Bloomberg, Goldman currently holds 154,539 shares of Windstream stock, which are worth over $1.2 million. The Proxy fails to disclose this conflict, and instead vaguely states that "Goldman Sachs and its affiliates and employees, and funds or other entities in which they invest or with which they co-invest, *may* at any time purchase, sell, hold or vote long or short

positions and investments in securities, derivatives, loans, commodities, currencies, credit default swaps and other financial instruments of…Windstream." Proxy at 90. This statement is misleading because it states that Goldman "may" hold stock in Windstream, when Goldman does in fact currently hold stock in Windstream worth over $1.2 million. The omission of the current size of Goldman's holdings in Windstream render this section of the Proxy incomplete and misleading.

> *Omission of Information Regarding the Strategic Alternatives and Alternative Business Combinations EarthLink Considered*

60. The Proxy also fails to disclose sufficient details regarding the strategic alternatives and alternative business combinations EarthLink purportedly considered prior to signing the Merger Agreement. The Proxy makes clear that EarthLink "held discussions with a number of potential financial and strategic parties regarding possible transactions, both in response to unsolicited inquiries and following contacts made by EarthLink" sometime between the summer of 2014 and the date the Merger Agreement was signed (Proxy at 55), but *does not provide any details regarding precisely when such discussions occurred, who such discussions were with, and the terms of any inquiries or indications of interest received*. The omission of such details renders the vague references in the Proxy to the strategic alternatives and alternative business combinations EarthLink purportedly considered incomplete and misleading. EarthLink shareholders would

undoubtedly find such information material, particularly in light of the fact that the Board instructed management and Foros not to contact other parties about a strategic transaction.

61.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against EarthLink and the Individual Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9, Regulation G, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4) Promulgated Thereunder)**

62.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements

therein not false or misleading." 17 C.F.R. § 240.14a-9.

64.    Further, the omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.  Here, as set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4).

65.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.    Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the background to the Proposed Transaction; (ii) financial projections for the Company and Windstream; (iii) conflicts of interest faced by the Board; and (iv) the valuation analyses performed by the Company's Financial Advisors and conflicts of interest they faced.

66.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as

they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

67. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Financial Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered both the financial analyses provided by the financial advisors as well as their fairness opinions and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and Windstream and the details surrounding the process leading up to the signing of the Merger Agreement.

68. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete

and misleading. Indeed, the Individual Defendants were required to review the bankers' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

69. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement. EarthLink is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

70. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law.

Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

71.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72.    The Individual Defendants acted as controlling persons of EarthLink within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of EarthLink, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

73.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the

ability to prevent the issuance of the statements or cause the statements to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

75.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

76.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

77.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated

Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

78.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action,

including reasonable attorneys' and expert fees and expenses;

      E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

      Plaintiff demands a trial by jury on all issues so triable.

Dated: February 3, 2017              Respectfully submitted,

                                  */s/ David A. Bain*
                                  David A. Bain
                                  **LAW OFFICES OF DAVID A. BAIN, LLC**
                                  Georgia Bar No. 032449
                                  1230 Peachtree Street NE, Suite 1050
                                  Atlanta, GA 30309
                                  T:  (404) 724-9990
                                  F:  (404) 724-9986
                                  dbain@bain-law.com

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Tel: (212) 971-1341
E-mail:
jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*